UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JACKSON'S BUY, SELL, TRADE, INC., an Idaho Corporation, and TERRY JACKSON,<br><br>                Plaintiffs,<br>  vs.<br><br>DOUG GIDDINGS, individually and in his official capacity as SHERIFF OF IDAHO COUNTY; the IDAHO COUNTY SHERIFF'S DEPARTMENT; the COUNTY OF IDAHO, STATE OF IDAHO; the IDAHO COUNTY COMMISSIONERS; and JOHN DOES 1–10,<br><br>                Defendants. | Case No. 3:18-cv-00124-DCN<br><br>**MEMORANDUM AND ORDER RE: MOTIONS FOR SUMMARY JUDGMENT** |

## I. INTRODUCTION

Pending before the Court are Defendants Doug Giddings (individually and in his official capacity as Sheriff of Idaho County), Idaho County Sheriff's Department, Idaho County, and the Idaho County Commissioners' Motion for Summary Judgment (Dkt. 13), and Plaintiffs Jackson's Buy, Sell, Trade, Inc. and Terry Jackson's Motion for Partial Summary Judgment (Dkt. 16). On September 3, 2019, the Court held oral argument and took the motions under advisement. Upon review, and for the reasons set forth below, the Court finds good cause to GRANT Defendants' Motion for Summary Judgment and DENY Plaintiffs' Motion for Partial Summary Judgement.

## II. BACKGROUND

In 1990, Plaintiffs Jackson's Buy, Sell, Trade, Inc., and Terry Jackson (collectively "Plaintiffs") sued Idaho County, the Idaho County Sheriff, and the Deputy Idaho County Sheriff (collectively "1990 Defendants") when they changed Idaho County's non-preference towing policies from prior policies, customs and/or practices that had been in effect, in some form, since 1975. Plaintiffs in the 1990 case are the same as those in this case. Idaho County and the Idaho County Sheriff are sued again in this case.

The Sheriff's Department relies on its non-preference towing call list when it calls for vehicle towing assistance, unless the driver requiring help requests a specific towing company. The Sheriff"s Department will uniformly rotate through the list, so that each of towing companies on the non-preference list have an opportunity to respond and get business. In the 1990 case, Plaintiffs alleged that they had acquired a property interest in receiving non-preference towing calls for towing services in Idaho County.

In 1992, the parties resolved the case via a joint stipulation ("Stipulation"). The parties stipulated that Plaintiffs had acquired a property interest in non-preference calls for towing services in Idaho County. Consequently, the Idaho County Commissioners implemented a new towing policy in 1992 that was in accordance with the various policies, customs and/or practices which had existed in Idaho County prior to 1990. Although this towing policy was amended in 2007 with Plaintiffs' input, the base policy implemented in 1992 remained substantially in effect.

However, on May 26, 2009, the County Commissioners voted in a public meeting to entirely rescind Idaho County's existing towing policy. A month later, on June 23, 2009,

the County Commissioners discussed their decision to terminate the old towing policy in a public meeting. Terry Jackson ("Jackson") was present and provided oral comments on the issue. On July 7, 2009, the County Commissioners again discussed revocation of the old towing policy, and Jackson again provided oral comments. During the meeting, the County Commissioners voted not to reverse their rescission of the old towing policy. After the July meeting, the Idaho County Sheriff adopted a new towing policy which gave the Sheriff more discretion to decide which tow providers would be on the non-preference tow rotation call list.

On December 19, 2015, Idaho County Sheriff's deputies arrested Jackson for driving under the influence. During this event, Jackson was allegedly involved in a physical altercation with the deputies. Three days later, the Idaho County Sheriff informed Plaintiffs in writing that based on Jackson's conduct on December 19, 2015, Plaintiffs were removed from the non-preference tow rotation list. The Idaho County Sheriff did not provide Plaintiffs with prior notice or an opportunity to be heard. Since December 21, 2015, Plaintiffs have not received any non-preference tow calls from Idaho County.

Plaintiffs filed suit on December 20, 2017, in the District Court of the Second Judicial District of the State of Idaho, in and for the County of Nez Perce, against Defendants Doug Giddings (individually and in his official capacity as Sheriff of Idaho County), Idaho County Sheriff's Department, Idaho County, and the Idaho County Commissioners (collectively "Defendants"). Plaintiffs alleged (1) a violation of their constitutional due process rights and civil rights under 42 U.S.C. § 1983, (2) breach of contract, and (3) tortious interference with Plaintiffs' economic advantage. On March 14,

2018, Defendants removed the action to the United States District Court for the District of Idaho pursuant to 28 U.S.C. §§ 1331, 1441, and 1446.

On April 8, 2019, Defendants filed the pending Motion for Summary Judgment. Dkt. 13. On April 9, 2019, Plaintiffs filed the pending Motion for Partial Summary Judgment on the issue of whether Defendants violated the Plaintiffs' Fourteenth Amendment due process rights. Dkt. 16.

### III. LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (citation omitted). In considering a motion for summary judgment, the Court must "view[ ] the facts in the non-moving party's favor." *Id*. To defeat a motion for summary judgment, the respondent need only present evidence upon which "a reasonable juror drawing all inferences in favor of the respondent could return a verdict in [his or her] favor." *Id*. (citation omitted).

Accordingly, the Court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The respondent cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment; rather the respondent must set forth the "specific facts," supported by evidence, with "reasonable particularity" that

precludes summary judgment. *Far Out Productions, Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

## IV. ANALYSIS

### a. Breach of Contract and Tortious Interference with Contract Claims

The Court first turns to Plaintiffs' claims for breach of contract and tortious interference with their economic advantage. Defendants argue that the statute of limitations bars both of these claims and governmental entities are immune from liability for tortious interference with contract claims under Idaho Code § 6-904(3). In response, Plaintiffs state they "do not oppose [Defendant's motion for] summary judgment as to Plaintiffs' claims for breach of contract or tortious interference with contract." Dkt. 19, at 1–2. Plaintiffs confirmed during oral arguments that they withdraw their state claims. Accordingly, the Court grants Defendants' motion for summary judgment on the claims of breach of contract and the tortious interference with Plaintiffs' economic advantage.

### b. Due Process and 42 U.S.C. § 1983 Claim

The Court next turns to Plaintiffs' sole remaining claim. Pursuant to 42 U.S.C. § 1983, Plaintiffs allege that Defendants deprived them of a property interest without due process of law in violation of the Fourteenth Amendment. In evaluating a procedural due process claim with regard to property under § 1983, courts analyze (1) whether plaintiffs possessed a property interest protected by United States Constitution or federal law, (2) if an individual acting under the color of state law deprived plaintiffs of that property interest, and (3) what process plaintiffs were due before they could be deprived of that interest. *Levine v. City of Alameda*, 525 F.3d 903, 905 (9th Cir. 2008).

In the context of the Fourteenth Amendment, a plaintiff has a "property interest" in a government benefit when he has a "legitimate claim of entitlement" to it. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709 (1972). Property interests are not created by the Constitution but are instead created "by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id*.

Plaintiffs identify the Stipulation they entered into with the 1990 Defendants in the federal 1990 case as the basis for their claim of entitlement. The Stipulation states, in relevant part:

> That Plaintiffs have acquired a "property interest" with regard to non-preference calls for towing services in Idaho County, pursuant to various policies, customs, and/or practices, which have existed in Idaho County over the past approximate seventeen (17) years and which preceded the development and implementation of the Idaho County Sheriff's Policy, concerning the providing of emergency towing services in Idaho County, date January 21, 1992.

3:90-cv-00415-HLR Dkt. 35, at 1. Because of this language, Plaintiffs argue that they had a property interest and were entitled to notice or an opportunity to be heard before the Idaho County Sheriff removed them from the non-preference towing rotation list. Thus, Plaintiffs contend their property interest was deprived without due process on December 21, 2015, when the Idaho County Sheriff suspended Plaintiffs from its non-preference tow rotation list without notice or an opportunity to be heard.

Defendants do not concede that Plaintiffs have a property interest in being on the non-preference tow rotation list. Dkt. 21, at 5. However, assuming such a property interest

ever existed, Defendants argue that Plaintiffs no longer possessed it as of December 21, 2015. They argue that Plaintiff's property interest only lasted while the policy in place was similar to the one referenced in the Stipulation. *Id*. Thus, Plaintiffs were deprived of their property interest, if any, on May 26, 2009, when the County Commissioners completely rescinded the County's prior towing policy.

      i. <u>Legal Claim of Entitlement Due to Mutually Explicit Understanding</u>

Plaintiffs implicitly argue that their legitimate claim of entitlement to being on the tow rotation call list is based on a "mutually explicit understanding," *Perry v. Sindermann*, 408 U.S. 593 (1972), as documented in the Stipulation they entered into with Defendants Idaho County and the Idaho County Sheriff in 1990.

Where state law does not explicitly create a legitimate claim of entitlement, a constitutionally protected property right also exists "where a governmental body employs policies and practices that create a legitimate claim of entitlement to a government benefit." *Gerhart v. Lake Cnty., Mont.,* 637 F.3d 1013, 1020 (9th Cir. 2011). To create such a claim, "there must be a clear and mutual understanding that the entitlement exists." *Vuksanovich-Dunn v. Miami Unified Sch. Dist. No. 40*, 550 F. App'x 528, 529 (9th Cir. 2013). Crucially, such understanding must be *mutual*; "[a] person's belief of entitlement to a government benefit, no matter how sincerely or reasonably held, does not create a property right if that belief is not mutually held by the government." *Gerhart*, 637 F.3d at 1020. Because of this, a government body's past practice of granting a government benefit is insufficient to establish a legal entitlement to the benefit. *See, e.g., id*. at 1020–21 (rejecting the argument that builder had a property interest due to county commission's past practice of leniently

granting approach permits in the absence of any evidence or allegation of a mutual understanding that builder was otherwise entitled to a permit); *Cassidy v. Hawaii,* 915 F.2d 528, 531 (9th Cir. 1990) (rejecting the argument that because the government body "generally renews permits, . . . this custom created an understanding that would justify a legal entitlement").

It is unclear why the parties stipulated that Plaintiffs had a property right in being on the non-preference towing list in the 1990 case. However, since that time, the Ninth Circuit has substantially clarified when a plaintiff has a legitimate claim of entitlement to a government benefit. *See Nunez v. City of Los Angeles*, 147 F.3d 867, 873 n.8 (9th Cir. 1998) (holding state law creates a constitutionally protected property interest where there are significant limitations on a decision maker's discretion); *Braswell v. Shoreline Fire Dep't*, 622 F.3d 1099, 1102 (9th Cir. 2010) (same); *Gerhart*, 637 F.3d at 1019–20 (holding a governmental body's policies and practices create a legitimate claim of entitlement where there is a mutually explicit understanding of such a claim between the private party and government). It may well be that if the Ninth Circuit had decided these cases prior to 1992, the district court would *not* have approved the Stipulation and would have instead dismissed the case.

However, it is evident in reviewing the Stipulation that, at least as of July 27, 1992, when the parties signed and entered into the Stipulation, Defendants Idaho County and the Idaho County Sheriff and Plaintiffs had a mutually explicit understanding that Plaintiffs had a "'protected property' interest with regard to non-preference tow calls, pursuant to the policies, customs, and/or practices" which then existed in Idaho County. 3:90-cv-00415-

HLR Dkt. 35, at 1. Yet an expectation of being on the tow rotation call list within the confines of a Stipulation tied to pre-existing Idaho County policies does not create a mutually explicit understanding that the policies *themselves* would not be terminated wholesale. *See, e.g.*, *Regents of the Univ. of California v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476, 515 (9th Cir. 2018), *cert. granted sub nom. Dep't of Homeland Sec. v. Regents of the Univ. of California*, 139 S. Ct. 2779 (2019) ("But it is hard to see how an expectation of renewal within the confines of the existing DACA policy could have created a mutually explicit understanding that the DACA program *itself* would not be terminated wholesale."). The Stipulation expressly states Plaintiffs' "property interest" with regard to non-preference calls for towing services in Idaho County was "pursuant to various policies, customs, and/or practices" that had been in place since 1975. Nothing in the Stipulation guaranteed the County's towing policy would remain unchanged in perpetuity.

The record shows that the Idaho County towing policy referenced in the Stipulation and implemented in 1992, was rescinded on May 26, 2009. After that time, the government no longer undersood Plaintiffs to have a property interest in being on the Sheriff's non-preference tow rotation call list. Rather, the government understood who was placed on, or removed from, the non-preference tow rotation call list was up to the Sheriff's discretion. Plaintiffs' belief that they were entitled to remain on the non-preference tow rotation call list, no matter how sincerely or reasonably held, does not create a protected property right if that belief is not mutually held by the government. *See Gerhart,* 637 F.3d 1013.

According to Jacksons' own statements in a 2009 public meeting, the county's towing policy "changed a bunch in [19]91 and [19]92" and "the basic policy" was revised,

with Jackson's participation, in 2007. Dkt. 13-2, at 30, 34. However, on May 26, 2009, the Idaho County Commissioners voted to rescind their current towing policy and, as stated in the County Commissioners' meeting minutes, to replace it with "a policy under the [S]heriff, only" where the Sheriff "will choose who they [sic] want for towing purposes." *Id*. at 10.

Plaintiffs were not provided notice in advance of the May 26, 2009 meeting and policy change. After the rescinding the policy, the County Commissioners called another public meeting on June 23, 2009, to discuss the rescission of the old towing policy. In part to remedy their oversight in failing to provide Plaintiffs with notice and opportunity to be heard before the May 26, 2009 vote, the County Commissioners notified Plaintiffs of the meeting. Jackson, individually and on behalf of his company, participated in the public meeting.

It is clear from the audio recording and rough transcript of the June 23, 2009 public meeting that the policy put in place in 1992 in accordance with the Stipulation had been terminated. One of the County Commissioners told Jackson that the problem with the old policy was that towing is "a Sheriff's issue" and "[i]s not a commissioner issue." *Id*. at 33. Therefore, the County Commissioners were "handing it over to the new Sheriff to administer his policy and that's where we stand." *Id*. The new towing policy would be different than the old one.[1] The Idaho County Sheriff would have more discretion under

---

[1] During the motion hearing, Plaintiffs' counsel argued that the Sheriff represented during the June 23, 2009 meeting that he was not changing the towing policy. However, although the Sheriff stated at one time there was "no change" in policy, he immediately clarified that he meant the overall framework of how a
(Continued)

the new towing policy than he did under the prior one. Jackson himself acknowledged this, when he commented in the meeting that the old policy, "the one [the County Commissioners] are throwing out, is spelled it out, 100%, the only thing that [sic] has an option of discretion, which was taken out, is life threatening or public endangerment. The only two." *Id.* at 37. In contrast to the old policy, which imposed limitations on the discretion of Idaho County Sheriff's Department's deputies to select towing companies, Jackson stated that under the new policy "[t]here is no guideline there. They can do what they want . . . ," (*id.*), and "[t]he officer calls who they want, when they want, it's however we [sic] want to do it" (*id.* at 30). Furthermore, Defendants allege that after the May 26, 2009 policy rescission, "the Idaho County Sheriff adopted a non-preference towing policy which gave the Sheriff absolute discretion as to which tow providers would receive non-preference tow calls." Dkt. 13-1, at 3.

During the June 23, 2009 pubic meeting, Jackson understood that as a consequence of the May 26, 2009 vote to rescind the policy, the pre-existing Idaho County policies tied to the Stipulation were terminated wholesale. In some form or another, Jackson described the County Commissioners' May 26, 2009 vote to rescind the existing towing policy as "throwing out" the old towing policy well over twenty times. For example, he claimed that

---

tower would be called remained unchanged. The Sheriff's comments during the meeting did not relate to whether the parties mutually understood that Plaintiffs had a property interest in being on the non-preference tow rotation call list. Rather, the Sheriff explained that, under the new towing policy, if a driver had a tow company preference, the Sheriff's Department would call that company. If the driver had no preference, the Sheriff's Department would use the non-preference tow rotation call list. However, the Sheriff's department could *also* make discretionary calls to individuals not on the tow rotation list. The Sheriff stated "I like the officers to be able to have discretionary calls." Dkt. 13-2, at 38.

MEMORANDUM DECISION AND ORDER - 11

the prior policy "was hammered out for years and in the last seventeen years there hasn't been much change in the policy but it made a lot of change in those years in [19]92, up to where the standard is now," but the county is now "back to the old thing because you guys threw the policy out." Dkt. 13-2, at 30. Jackson complained that the County Commissioners' actions violated the 1992 Stipulation because the policy was thrown out "without any hearings" and without "due process." *Id*. at 30–31. Because of his claim that his rights were violated, he told the County Commissioners he had "filed a tort claim for throwing the policy out before you had due process." *Id*. at 30.[2] He went on to argue that after the 1990 federal court case, "*we* set up a policy" and the County Commissioners had to "have a good reason to throw out a policy." *Id*. at 32. Jackson also contended that the County Commissioners should only amend the base 1992 policy and "not throw the policy out because the policy is a good policy." *Id*. at 34. In addition, he told the County Commissioners "on May 26th when you threw [the old policy] out, it changed my livelihood." *Id*. at 35.

As previously stated, for a property right to exist outside of state law, the understanding must be mutual. As demonstrated in the May 26, 2009 meeting minutes and subsequent public discussions, the County Commissioners explicitly voted to rescind the old policy—the policy that had been implemented in accordance with the Idaho County policies, customs, and/or practices that had existed prior to the Stipulation—in order to replace it with a new policy in which the Sheriff, and only the Sheriff, would have

---

[2] There is no record before this Court of whether Plaintiffs did file such a suit.

discretion to choose who the Sheriff's Department used for towing services. Dkt. 13-2, at 10. The government no longer believed that any towing company, including Plaintiffs, had a property interest in being on the tow rotation list.

Prior to the County Commissioners' vote to terminate the old policy, Plaintiffs *were* entitled to notice and an opportunity to be heard. However, Plaintiffs did not bring a claim in 2009 for the unconstitutional deprivation of their property interest, despite pointing out in a public meeting that the government had rescinded the old policy without notice or due process in order to replace it with a new, more discretionary towing policy that was not in accordance with the policies, customs, and/or practices underlying the Stipulation. Plaintiffs also cannot bring a claim in this case that the 2009 policy change was unconstitutional because such a claim would be barred under the applicable statute of limitations.

Under the new policy, the Sheriff had the "sole discretion" to decide who was on the non-preference tow rotation call list. It is unclear when the new policy was actually implemented. At the earliest, it was adopted immediately after the May 26, 2009 meeting, but Defendants acknowledged during oral arguments that they do not possess documentation of the towing policy put in place after May 26, 2009. At latest, it was implemented on February 1, 2014, when the Idaho County Sheriff's Office Policy Manual: Vehicle Towing Policy ("2014 Policy Manual"), submitted by the Defendants as Exhibit 7 to the Declaration of Bentley G. Stromberg, was adopted. Dkt. 13-2, at 48. Section 510.3 of the 2014 Policy Manual states, "[t]he Idaho County Sheriff has *sole discretion* as to the tow companies [sic] placement and/or removal from the tow rotations." Dkt. 13-2, at 48.

discretion to choose who the Sheriff's Department used for towing services. Dkt. 13-2, at 10. The government no longer believed that any towing company, including Plaintiffs, had a property interest in being on the tow rotation list.

Prior to the County Commissioners' vote to terminate the old policy, Plaintiffs *were* entitled to notice and an opportunity to be heard. However, Plaintiffs did not bring a claim in 2009 for the unconstitutional deprivation of their property interest, despite pointing out in a public meeting that the government had rescinded the old policy without notice or due process in order to replace it with a new, more discretionary towing policy that was not in accordance with the policies, customs, and/or practices underlying the Stipulation. Plaintiffs also cannot bring a claim in this case that the 2009 policy change was unconstitutional because such a claim would be barred under the applicable statute of limitations.

Under the new policy, the Sheriff had the "sole discretion" to decide who was on the non-preference tow rotation call list. It is unclear when the new policy was actually implemented. At the earliest, it was adopted immediately after the May 26, 2009 meeting, but Defendants acknowledged during oral arguments that they do not possess documentation of the towing policy put in place after May 26, 2009. At latest, it was implemented on February 1, 2014, when the Idaho County Sheriff's Office Policy Manual: Vehicle Towing Policy ("2014 Policy Manual"), submitted by the Defendants as Exhibit 7 to the Declaration of Bentley G. Stromberg, was adopted. Dkt. 13-2, at 48. Section 510.3 of the 2014 Policy Manual states, "[t]he Idaho County Sheriff has *sole discretion* as to the tow companies [sic] placement and/or removal from the tow rotations." Dkt. 13-2, at 48.

Therefore, on December 21, 2015, Plaintiffs were only on the tow rotation call list because the Sheriff allowed them to be on the list. Plaintiffs may have sincerely believed they still had a property interest in being on the non-preference tow rotation list, in part because they had not been removed from that list since the 2009 policy change. However, "[a] constitutional entitlement cannot be created—as if by estoppel—merely because a wholly and *expressly* discretionary state privilege has been granted generously in the past." *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 465 (1981) (internal quotations omitted). Therefore, Plaintiffs were not entitled to notice or an opportunity to be heard when they were removed from the call list on December 21, 2015.

Not only did Plaintiffs lack a property interest after the policy was changed, but the statute of limitations has run on any claim of a property interest. The statute of limitations to file § 1983 claims in Idaho is two years. *See McCabe v. Craven*, 188 P.3d 896, 899 (2008). Plaintiffs filed their § 1983 claim on December 20, 2017, over two years after the mutually explicit understanding had been terminated. Plaintiffs' due process claim is barred by the statute of limitations.

> ii. <u>Legal Claim of Entitlement Due to State Law</u>

In the alternative, a legitimate claim of entitlement can be created by state law, rather than through a mutually explicit understanding. Here, neither party identifies any state law that imposes limitations on Idaho County, the Idaho County Commissioners, or the Idaho County Sheriff's discretion to add or remove towing companies' placement on the Sheriff Department's tow rotation call list. The Court is likewise unaware of any such state law.

Even if there was such a state law, it would only "giv[e] rise to a protected property

interest if it 'impose[s] significant limitation[s] on the discretion of the decision maker.'" *Braswell*, 622 F.3d at 1102 (alterations in original) (quoting *Nunez*, 147 F.3d at 873 n.8). In cases analogous to this one, the Ninth Circuit has held an entitlement to a government permit "exists when a state law or regulation requires that the permit be issued once certain requirements are satisfied." *Gerhart*, 637 F.3d at 1019–20. *See, e.g.*, *Groten v. California*, 251 F.3d 844, 850 (9th Cir. 2001) (holding that a protected property right to a license existed where both federal and state law entitled the applicant to a license whenever certain statutory requirements were met). However, when state law does constrain a governing body's discretion in granting or denying a permit application, there is no claim of entitlement. For instance, in *Gerhart*, state law did not impose any limitations on county commissioners' discretion to issue permits to construct roads approaches. Rather, state law provided, "[e]ach board of county commissioners may in its discretion do whatever may be necessary for the best interest of the county roads and the road districts." 637 F.3d at 1020 (quoting Montana Code Annotated section 7–14–2102). Consequently, the Ninth Circuit found that state law did not entitle applicants to permits to construct road approaches because "state law does not constrain the Commissioners' discretion to grant or deny approach permit applications." *Id*. at 1020.

Here, even if state law had originally created a protected property right, Plaintiffs were deprived of that right once the County Commissioners enacted the new discretionary

towing policy.[3] Unlike the old policy, which imposed significant limitations on the discretion of the Idaho County Sheriff in deciding which tow providers would receive non-preference tow calls, the new policy granted the Sheriff "sole discretion" to choose the tow companies on non-preference tow rotation call list. At latest, this policy was adopted on February 1, 2014. After its adoption, Plaintiffs no longer had a legitimate claim of entitlement pursuant to state law to being on the non-preference tow rotation call list. As Plaintiffs did not possess a property interest in being on the non-preference tow rotation call list as of December 21, 2015, they were not deprived due process when they were removed from the list on that date.

## V. CONCLUSION

Plaintiffs' protected property interest was based on a mutually explicit understanding with the government that was terminated on May 26, 2009. Therefore, Plaintiffs' property was deprived in 2009. However, even if Plaintiffs' claim of entitlement was based on state law, their property interest would have been deprived at the latest on February 1, 2014, when the decision maker's discretion was no longer significantly limited. Either way, Plaintiffs' due process claim is barred by the two-year statute of limitations.

---

[3] Even if state law gives rise to a protected property interest, that property interest may be deprived as long as procedural due process is provided. For instance, in *Goldberg v. Kelly,* the Supreme Court held that state welfare benefits were a protected property interest but could be discontinued following procedural due process. 397 U.S. 254 (1970). The Ninth Circuit reached a similar conclusion in *Nozzi v. Hous. Auth. of City of Los Angeles*, 806 F.3d 1178 (9th Cir. 2015), *as amended on denial of reh'g and reh'g en banc* (Jan. 29, 2016). In *Nozzie,* the Ninth Circuit found that Section 8 housing voucher holders have a protected property interest in housing benefits that continue for a period of at least one year after they are advised their benefits may be decreased. *Id*. at 1191 However, those protected benefits may be rescinded earlier if due process is followed. *Id.*

## VI. ORDER

Therefore, it is HEREBY ORDERED:

1. Defendants' Motion for Summary Judgment (Dkt. 13) is **GRANTED**;

2. Plaintiffs' Motion for Partial Summary Judgment (Dkt. 16) is **DENIED**;

3. This case is dismissed in its entirety and closed;

4. A separate judgment will be issued.

DATED: September 30, 2019

David C. Nye
Chief U.S. District Court Judge